B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Mark P. Bogan | DEFENDANTS<br>Joseph M. DiStasio |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Robert K. Kelly and Seth D. Klotz<br>21 Franklin Street, Third Floor<br>Quincy, MA 02169  (617)479-8133 | ATTORNEYS (If Known)<br>David B. Madoff, MADOFF & KHOURY<br>124 Washington Street<br>Foxboro, MA 02035  (508)543-0040 |
| PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>☒ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Objection to discharge of Debtor and dischargeability of debt with
regard to the following: 11 U.S.C. 523(a)(2) and (a)(4) and
11 U.S.C. 727(a)(2),(a)(3),(a)(4),(a)(5),and (a)(7).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation
  (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
□ 02-Other (e.g. other actions that would have been brought in state court
  if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $  N/A |

Other Relief Sought
Objection to Discharge of Debtor and Dischargeability of debt

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Joseph M. DiStasio | BANKRUPTCY CASE NO.<br>10-10040 JNF | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Eastern | NAME OF JUDGE<br>Feeney |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>February 10, 2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Robert K. Kelly and Seth D. Klotz | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants**. Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand**. Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| JOSEPH M. DISTASIO, ) | Case No. 10-10040-JNF |
| ) | |
| Debtor ) | |

| | |
|---|---|
| MARK P. BOGAN, a Creditor, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Adversary Proceeding Number _____ |
| ) | |
| JOSEPH M. DISTASIO, ) | |
| ) | |
| Defendant ) | |

## COMPLAINT TO OBJECT TO DISCHARGE OF DEBTOR AND DISCHARGEABILITY OF DEBT

### PARTIES

1.  Plaintiff Mark P. Bogan (hereinafter "Bogan"), is a Creditor of Joseph M. DiStasio ("DiStasio") and resides in Marshfield, Massachusetts.

2.  The Debtor and Defendant Joseph M. DiStasio (hereinafter "DiStasio"), is an individual who resides at 80 Canavan Drive, Braintree, Massachusetts.

### JURISDICTION

3.  This action is a core proceeding pursuant to 28 U.S.C. §157. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§151, 157 and 1334.

4.    On January 5, 2010 (the "Petition Date"), DiStasio filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S. §101 et seq. (the "Bankruptcy Code") for himself and the two related entities, D&B Tree Service, Inc. (Case No. 10-10038 JNF) (hereinafter, the "Company"), and Able Tree Service, Inc. (Case No. 10-10039 JNF) (hereinafter, "Able").

## BACKGROUND

5.    Prior to the petition date, in the late summer months of 1996, Bogan and DiStasio started a tree cutting and landscaping company as equal partners, each bringing an equal amount of capital. The Company was called D&B Tree Service. The letters "D" and "B" stand for "DiStasio" and "Bogan," respectively.

6.    Towards the end of the first year of operation, a division of labor emerged whereby Bogan was the operations manager, handling all of the physical labor and running all of the work crews and DiStasio stayed in the office handling the money, payments, and business side of the partnership.

7.    On or about December 31, 1997, DiStasio announced that he was incorporating the Company for better legal protection of the partners. Likewise DiStasio also informed Bogan that in order to facilitate transactions with banks and simplify contractual relationships with third parties, it would be necessary for the 50/50 ownership split to instead reflect a 75/25 split in DiStasio's favor, on paper, although the actual equitable ownership percentages would not change.

8.    After several years had passed, Bogan became increasingly suspicious about the Company's and DiStasio's finances, because DiStasio appeared to afford an extravagant lifestyle. To wit, DiStasio had purchased many valuable pieces of real estate including a nearly one million dollar home, several other investment properties, a condominium in Florida, many luxury automobiles, and took numerous expensive vacations each year. All the while, DiStasio claimed that the Company was not making much money and could not afford to pay Bogan more.

2

9.    Bogan demanded accountings and access to the Company's books over the years to determine the Company's true financial condition and to understand what would happen to the large amount of cash that the Company would take in each week. However, Bogan was always denied access and often rebuffed in a brusque and offensive manner.

10.    Because of DiStasio's failure to give accountings and declining to grant access to the corporate documents in the mid-2000's, and the refusal of DiStasio to negotiate any fair or reasonable buyout agreements, Bogan was frozen out of the management of the Company and forced to leave on April 6, 2007.

11.    On or about September 19, 2008, Bogan commenced a civil action in the Norfolk Superior Court (Docket: NOCV2008-01765) (hereinafter, the "State Court Litigation") against DiStasio and the related entities, D&B Tree Service, Inc., and Able Tree Service, Inc. The State Court Litigation is based on DiStasio's deliberate diversion of revenue, theft of cash and assets, and organized looting of the Company.

12.    Additionally, after Bogan was frozen out of the Company and forced to leave, DiStasio falsified a bank loan application, claiming that he was the 100% owner of the both the Company and also additional parcels of real estate owned by the Company, and mortgaged them as collateral in order to receive a loan and line of credit from Eastern Bank (hereinafter, the "Loan") in excess of one million dollars. In fact, Bogan was a 50% owner of the Company and its holdings. DiStasio has subsequently conceded that he was not a 100% owner at the time of the bank Loan.

13.    After the commencement of the State Court Litigation, Bogan requested production of basic business records of D&B Tree Service, Inc. including balance sheets, profit and loss statements, bank statements, check ledgers and cancelled checks.

3

14.    Very few of the documents sought were actually turned over. Accordingly, Bogan had little choice but to file a Motion to Compel Production of Documents and two separate Motions for Sanctions for failing to comply with the Court's orders. The most recent Motion for Sanctions was scheduled to be heard in the Norfolk Superior Court on January 5, 2010 in the afternoon. It was that very morning when DiStasio filed for bankruptcy personally as well as for the Company, and Able.

15.    Prior to Bogan's forced departure from the Company, and continuing through the Petition Date, upon information and belief, DiStasio began a systematic effort to divert funds from the Company to his wife, Jill DiStasio. Such actions included the payment of "salary" to Jill DiStasio, even though she provided no substantial services to the Company as well as the diversion of cash or other assets to Jill DiStasio.

16.    Following the filing of bankruptcy petitions by DiStasio, the Company and Able, DiStasio appeared and testified at the initial creditor's meeting on April 15, 2010. Among other testimony, DiStasio claimed, under oath, that he had not disposed of any assets of the Company prior to the filing. However, upon information and belief, snow plows which were Company assets had been transferred to a fuel proprietor, BeeZee Auto of Quincy, MA. (hereinafter, the "BeeZee Auto Transfer"). DiStasio denied the transfers and the Bee Zee Auto Transfer was not listed in response to Question 10 of the Company's statement of financial affairs (SOFA). DiStasio again denied the occurrence of the Bee Zee Auto Transfer at a FRBP 2004 examination (hereinafter, "the 2004 Examination") on November 5, 2010, which was conducted by Bogan's Counsel.

17.    Additionally, at the initial meeting of creditors, Bogan's counsel inquired about two metal storage containers ("Storage Containers") that were transferred off of the Company property and transported to one of DiStasio's other properties. Upon

4

information and belief, the Storage Containers were assets of the Company but were not listed on the Company's schedule of personal property.

18.    Upon information and belief, before the Storage Containers were moved off of Company property, DiStasio loaded them with valuable Company assets including, chain saws, ropes, saddles, and mechanic's tools, among other equipment (hereinafter, the Storage Container Assets"), to be used in DiStasio's wife's new tree-cutting business called Green Tech, Corp.[1] These items can be conservatively valued in excess of $25,000.

19.    The Bankruptcy Trustee, made it clear, and stated on the record that DiStasio was not to open the Storage Containers without permission. Further, the Bankruptcy Trustee, at the request of Bogan's Counsel, allowed Bogan to place padlocks on the Storage Containers to ensure that the Trustee's order was carried out.

20.    Several weeks later, it was determined that the locks on the Storage Containers placed by Bogan had been cut off without explanation.

21.    At the 2004 Examination of DiStasio, DiStasio admitted that it was he (DiStasio) that cut the locks off with a blowtorch. Upon information and belief, DiStasio removed the Storage Container Assets contained therein, as described above.

22.    On April 14, 2010, Eastern Bank, the secured party, held an auction of the Company assets whereby all of the large pieces of valuable tree-cutting equipment were sold.

23.    Upon information and belief, several large pieces of equipment were purchased by a strawman, at the behest and direction of DiStasio, or his wife, with the intent to use that equipment for Green Tech.

---

[1] Green Tech Corp. (hereinafter "Green Tech"), is a tree-cutting company which was incorporated on March 22, 2010 by DiStasio's wife, Jill DiStasio, who holds the positions of President, Treasurer, Secretary, and Director. DiStasio went on to say that Green Tech was capitalized with $10,000.

24. Upon information and belief, DiStasio, or his wife, through the strawman, purchased among other things, a 2005 Infinity QX56 luxury SUV, a 2004 Isuzu Spray Truck, and a 1998 GMC Bucket Truck, among other things, for a total purchase price of $63,700.

25. Through DiStasio's own testimony, it is not disputed that this equipment is now in service at Green Tech, and purchased by his wife, although it was not his wife who did the bidding or purchasing at the auction.

26. Furthermore, DiStasio, having had access to the equipment prior to the auction, upon information and belief, did remove parts specific to certain equipment, in order to substantially devalue the equipment, so that he and his confederates could purchase that equipment at a much lesser value.

27. Specifically, the Isuzu Spray Truck that was purchased for Green Tech was missing two key components, that being the pump ("Spray Truck Pump") and hose mechanism on the date of the auction, as was announced by the auctioneer. The truck is inoperable without either, such that DiStasio or his wife was able to purchase the Isuzu Spray Truck at a substantially reduced price, to the detriment of the bankruptcy estate.

28. However, DiStasio did testify that he had used the spray truck for spraying both prior to and after the auction, meaning that the Isuzu Spray Truck was in proper working order prior to and subsequent to the auction with all necessary parts attached, including the Spray Truck Pump and hose mechanism.

29. Likewise, several valuable pieces of Company equipment were absent from the premises when the auction was conducted. These items include a 2000 Ford F-150 Pickup Truck with plow, a 1996 Brush Bandit 250XP Chipper, and the Company's entire inventory of ropes, saddles, chainsaws, and mechanic's tools (hereinafter, the "Missing Assets").

6

30.    In connection with Bogan's 2004 Examination of DiStasio, and in order to
       determine the Company's and DiStasio's financial condition, Bogan asked to see
       the basic financial records and documents of the Company as well as for DiStasio
       personally.

31.    Some of the basic documents requested were:

       a.    Bank statements and cancelled checks for all bank accounts
             (checking, savings, money market, etc.) held in the names of
             Joseph M. DiStasio, Jill DiStasio, and D&B Tree Service, Inc. for
             the period January 1, 2005 up to and including the present;

       b.    Balance sheets for D&B Tree Service, Inc. for the years 2004 up to
             the present, including but not limited to Balance Sheet Details,
             whether held on computer based accounting software or otherwise;

       c.    Profit and Loss sheets for D&B Tree Service, Inc. for the years
             2004 up to the present, including but not limited to Profit and Loss
             Sheet Details, whether held on computer based accounting
             software or otherwise;

       d.    A report of Summary and Details of the cash receipts and holdings
             of D&B Tree Service, Inc. for the years 2004 up to the present,
             whether held on computer based accounting software or otherwise;

       e.    Any and all check registers, check ledgers, or checkbooks for D&B
             Tree Service, Inc. from 2004 up to and including the present,
             whether held on computer based accounting software or otherwise;

       f.    Evidence of loans made to D&B Tree Service, Inc. by Joseph M.
             DiStasio, as stated on DiStasio's SOFA; and

       g.    Any and all documents relating to the 2007 IRS audit of D&B Tree
             Service, Inc.

32.    With regard to items b., c., d., f., and g. above, Bogan has not received any
       documents responsive to those requests. With regard to a. and e., Bogan has
       received a portion of the relevant documents, but not from DiStasio directly, and
       not to the extent that Bogan is able to determine DiStasio's financial condition or
       his entitlement to a discharge under the Code.

7

33.    Additionally, the records received by Bogan have proven that there were several more bank accounts than DiStasio had listed on his Schedule B, personal property.  To wit, Schedule B lists one joint bank account from Citizen's bank. However, documents received from Citizen's Bank show that there are in fact <u>two joint accounts</u> and <u>two personal accounts</u> held in DiStasio's name.

34.    Furthermore, DiStasio was also asked to provide his 2010 personal tax returns as well as the 2010 corporate tax returns for the Company. DiStasio claimed that they were both on extension and would be provided at the respective tax extension deadlines. However, at the 2004 Examination, which occurred on November 5, 2010, a date *after* the September 15 corporate extension deadline and *after* the October 15 personal extension deadline, DiStasio claimed that he was advised by his accountant not to file those returns. Upon information and belief, no tax returns have yet been filed by DiStasio personally or by the Company.

<u>COUNT I</u>

11 U.S.C. §523(a)(2)(A)

<u>(Money, Property, and Refinancing Obtained by False Pretenses, False Representation or Actual Fraud)</u>

35.    Bogan repeats and realleges the allegations contained in paragraphs 1-34 as if fully set forth and incorporates them herein.

36.    DiStasio made false representations or committed actual fraud in representing to Bogan that business would be conducted on a 50/50 partnership basis.

37.    Following DiStasio's false representations, DiStasio unilaterally reduced Bogan's 50% share of the Company and its holdings to 25% or less without consideration or benefit to Bogan.

38.     In reliance upon DiStasio's representations, Bogan provided valuable services to the Company over an 11 year period. Bogan did not receive adequate consideration for either his services or for his interest in the Company.

39.     DiStasio systematically and deliberately siphoned Company cash and assets to be used for the personal benefit of DiStasio and/or his wife.

40.     Based upon the foregoing, DiStasio's discharge should be denied pursuant to 11 U.S.C. §523(a)(2)(A).

## COUNT II

### 11 U.S.C. 523 (a)(4)
### (Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement or Larceny)

41.     Bogan repeats and realleges the allegations contained in paragraphs 1-40 as if fully set forth and incorporates them herein.

42.     At all relevant times, DiStasio was an officer, shareholder, and co-owner of the Company, for which he owed Bogan and the Company fiduciary responsibilities.

43.     DiStasio breached his fiduciary responsibilities by misappropriating corporate assets, including Company revenues and equipment.

44.     While acting in his role as President, Treasurer, and Director of the Company, DiStasio diverted funds for his personal benefit by using Company funds including cash, for personal use and to make payments of personal credit card expenditures.

45.     The systematic and deliberate diversion of Company cash and assets for the personal use of DiStasio, constitutes embezzlement and larceny.

46.     DiStasio further breached his fiduciary duties by misrepresenting the use of Company funds and delivering same to his wife for the benefit of Green Tech.

9

47.    DiStasio's mortgaging of the property located at 35 Federal Avenue, Quincy,
Massachusetts, and not disclosing that Bogan had an ownership interest in said
property constitutes fraud while acting in a fiduciary capacity.

48.    Based upon the foregoing, DiStasio's discharge should be denied pursuant to
11 U.S.C. 523 (a)(4).

COUNT III

11 U.S.C. §727(a)(2) and (7)
(Transfer or Concealment of Property With Intent To Hinder, Delay or Defraud)

49.    Bogan repeats and realleges the allegations contained in paragraphs 1-48 as if
fully set forth and incorporates them herein.

50.    Upon information and belief, following the Petition Date, DiStasio's monthly bills
totaling approximately $11,433, as reported on his Schedule J expenses, were paid
current. Upon information and belief, the payments were made by Jill DiStasio.
Similarly, upon information and belief, Green Tech purchased assets at the
auction in the sum of $63,700 using funds derived from Jill DiStasio.

51.    Upon information and belief, the funds used to pay DiStasio's post-petition bills
and fund Green Tech's purchases were transferred to Jill DiStasio from DiStasio
and the Company without fair consideration and/or concealed from the
bankruptcy estate within one year prior to the Petition Date.

52.    In addition, DiStasio also concealed the Spray Truck Pump, the rear seat of the
Infinity SUV, the Storage Container Assets, the Storage Containers themselves,
and the Missing Assets from the bankruptcy estate.

53.    Based upon the foregoing, DiStasio's discharge should be denied pursuant to
11 U.S.C. §727(a)(2).

## COUNT IV

### 11 U.S.C. §727(a)(3) and (7)
(Concealed, Destroyed, Mutilated, Falsified, or Failure to Keep or Preserve Records)

54.    Bogan repeats and realleges the allegations contained in paragraphs 1-53 as if
fully set forth and incorporates them herein.

55.    Based upon information and belief, the Debtor has destroyed or failed to keep or
preserve recorded information, including but not limited to, bank statements,
checkbooks, and account ledgers, from which his financial condition and the
Company's financial condition or business transactions might be ascertained.

56.    Bogan has asked on numerous and divers dates, in preparation for DiStasio's
2004 Examination, to be provided with basic financial documents so that
DiStasio's and the Company's financial condition might be ascertained. The
majority of those basic documents have never been received, as more fully
described above.

57.    DiStasio's destruction or failure to keep and preserve recorded information was
not justified under all circumstances of the case.

58.    Based upon the foregoing, the Debtor's discharge should be denied pursuant to
11 U.S.C. §727(a)(3).

## COUNT V

### 11 U.S.C. §727(a)(4)(A)
(False Oath)

59.    Bogan repeats and realleges the allegations contained in paragraphs 1-58 as if
fully set forth and incorporates them herein.

60.    DiStasio failed to disclose the transfers of his interest in various funds and cash
from the Company and from Joseph DiStasio personally to his wife, Jill DiStasio.

11

61.   DiStasio failed to disclose the Bee Zee Auto Transfer in response to direct
      questioning by the Plaintiff's attorney at the 341 meeting, and in response to
      question 10 of the SOFA.

62.   DiStasio failed to disclose the Company's interest in the Storage Containers, the
      Storage Container Assets, and the Missing Assets, on the Company's schedule of
      personal property filed in the case.

63.   DiStasio failed to accurately prepare his schedules and SOFA, including but not
      limited to, his failure to list the existence of two additional bank accounts at
      Citizen's Bank.

64.   DiStasio has knowingly and fraudulently made false oaths or accounts in
      connection with this case.

65.   Based on the foregoing, the Debtor's discharge should be denied pursuant to
      11. U.S.C. Section 727(a)(4)(A).

## COUNT VI
### 11 U.S.C. §727(a)(5) and (7)
#### (Failure to Explain Loss or Deficiency of Assets)

66.   Bogan repeats and realleges the allegations contained in paragraphs 1-65 as if
      fully set forth and incorporates them herein.

67.   DiStasio has failed to provide any substantial books and records of himself or the
      Company. Accordingly, he has failed to satisfactorily explain the loss or
      deficiency of his assets to meet his liabilities.

68.   Based upon the foregoing, the Debtor's discharge should be denied pursuant to
      11 U.S.C. §727(a)(5).

12

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff requests that this Honorable Court enter Judgment:

(i)     Denying DiStasio's discharge pursuant to 11 U.S.C. §523(a)(2);

(ii)    Denying DiStasio's discharge pursuant to 11 U.S.C. §523(a)(4);

(iii)   Denying DiStasio's discharge pursuant to 11 U.S.C. §727(a)(2);

(iv)    Denying DiStasio's discharge pursuant to 11 U.S.C. §727(a)(3);

(v)     Denying DiStasio's discharge pursuant to 11 U.S.C. §727(a)(4);

(vi)    Denying DiStasio's discharge pursuant to 11 U.S.C. §727(a)(5);

(vii)   Denying DiStasio's discharge pursuant to 11 U.S.C. §727(a)(7);

(viii)  Awarding the Creditor's costs and attorney's fees in connection with the prosecution of this action; and

(ix)    Providing such other and further relief as is just and equitable.


Respectfully submitted,

MARK P. BOGAN, Creditor and Plaintiff

By his attorney,


/s/Seth D. Klotz
Robert K. Kelly, Esquire
BBO# 267100
Seth D. Klotz, Esquire
BBO#672692
21 Franklin Street, Third Floor
Quincy, MA 02169
Dated: February 10, 2011       (617) 479-8133

13